# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| BRUNSWICK HOMES, LLC | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Case No. 4:07-cv-421 |
| | § | |
| JEFFREY H. MIMS, CHAPTER 7 | § | |
| TRUSTEE OF THE BANKRUPTCY | § | |
| ESTATE OF JAMES H. MOORE, III | § | |
| | § | |
| Appellee. | § | |
| _____ | § | |
| | § | |
| In re: HORSESHOE NAIL RANCH, L.P. | § | Bankruptcy Case No. 06-41556 |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Appellant Brunswick Homes, LLC challenges the Bankruptcy Court's July 20, 2007 Order Granting in Part and Denying in Part Objections to the Claim of Brunswick Homes, LLC.[1] This Court has jurisdiction to consider this appeal pursuant to 28 U.S.C. § 158. Having considered the arguments of counsel, the evidence of record, and the applicable law, the Court VACATES and REMANDS for further finding consistent with this opinion.

---

[1] The Court notes that a separate appeal was filed regarding the same order by the appellee in this case, Jeffrey H. Mims (Case No. 4:07-cv-420). This memorandum opinion and order, however, will only address the issues presented by Brunswick Homes' appeal. A separate memorandum opinion and order will address the appeal by Mims.

1

## I. BACKGROUND

### A. Northstar Note

Horseshoe Nail Ranch, LP, Debtor, was formed for the purpose of purchasing, developing and subdividing certain real property known as Horseshoe Nail Ranch and Dane Ranch (collectively, the "Ranch"). The Limited Partnership Agreement creating Debtor (hereafter the "Partnership Agreement") anticipated that Debtor would subdivide the Ranch into a total of 31 lots. As part of the Partnership Agreement, Brunswick Homes agreed that, upon approval of a plat of the Ranch by Denton County, it would purchase the first lot from Debtor. Further, Brunswick Homes agreed to purchase every fourth lot.

On May 29, 2001, Debtor executed a promissory note in the principal amount of $1,450,000.00 (hereafter the "Northstar Note") payable to Northstar Bank of Texas ("Northstar"). Northstar filed a Deed of Trust on June 1, 2001 securing its interest in Debtor's real and personal property.

At the request of Northstar, Debtor and Brunswick Homes executed a Tri-Party Agreement with Northstar. In the Tri-Party Agreement, Debtor and Brunswick Homes represented to Northstar that there were provisions in the Partnership Agreement requiring Brunswick Homes to purchase a sufficient number of lots from Debtor to repay the Northstar loan on a regular basis. Further, the Debtor and Brunswick represented to Northstar that they would make sufficient funds available to make all payments due to Northstar on a timely basis.

From March 2002 through May 2006, Brunswick Homes paid $1,638,404.31 directly to Northstar.

### B. December 2003 Note

On December 12, 2003, Debtor and Brunswick Properties executed a Deed of Trust and Security Agreement (the "December 2003 Note"). Pursuant to the arrangement, Brunswick Properties agreed to advance $500,000 to Debtor, secured by an interest in Debtor's real property. Brunswick Properties later assigned the loan to Brunswick Homes because Brunswick funded the note. Neither Brunswick Properties nor Brunswick Homes took any action to perfect a security interest in Debtor's property.

The purpose of this note was to provide Debtor with the funds necessary to pay the Northstar Note.

### C. Chapter 7 Bankruptcy

In 2006, Debtor filed for bankruptcy. Later, Brunswick Homes filed its proof of claim against Debtor asserting a claim of not less than $2,882,421, as follows:

|  | Principal | Interest | Total |
|---|---|---|---|
| Payments on Northstar Note | $1,638,404.31 |  | $1,638,404.31 |
| May 2002 Note[2] | $500,000 | $130,815.69 | $630,815.69 |
| December 2003 Note | $500,000 | $95,829.24 | $595,829.24 |
| Excess payments pursuant to DOT[3] | $16,023.24 | $1,348.52 | $17,371.76 |
|  | **$2,654,427.55** | **$227,993.45** | **$2,882,421.00** |

Brunswick Homes argued that it was entitled to a secured claim in the amount of $1,638,404.31 for the payments made on the Northstar Note and an unsecured claim in the amount of $1,244,016.69 for the May 2002 Note, the December 2003 Note, and the excess payments pursuant to DOT.

---

[2] This is the subject of the Appellee Mim's bankruptcy appeal (Case No. 4:07-cv-420).

[3] It is unclear from the record the precise meaning of excess payments pursuant to DOT.

The Bankruptcy Court found that as to the payments made on the Northstar Note, Brunswick Homes was entitled to be equitably subrogated to the liens and priorities of Northstar for a portion of the $1,638,404.31 it paid to Northstar. The Bankruptcy Court held that Brunswick Homes was only entitled to a secured claim in the amount of $1,138,404.00. In particular, the court concluded that Brunswick Homes should be equitably subrogated to the liens of Northstar to the extent necessary for $923,230 of its claim to be secured by Debtor's 15 developed lots, which is similar to what Brunswick Homes would have received if it had purchased Debtor's first lot and every fourth lot thereafter based on the median values of the 31 lots listed in Exhibit F to the Partnership Agreement. The court further concluded that $215,174 of Brunswick Homes' claim was secured by the two undeveloped parcels of land (described as Additional Acreage A and Additional Acreage B in the Debtor's current takedown schedule). The court further found "[w]ith respect to the additional $500,000 paid to Northstar, Brunswick Homes agreed to loan Debtor the funds to make these payments in December and may not use the doctrine of equitable subrogation to elevate its unsecured claim for repayment to secured status."

The Bankruptcy Court held that Brunswick Homes was only entitled to a secured claim in the amount of $1,138,404.00. As to the unsecured claim, the Bankruptcy Court agreed that Brunswick Homes was entitled to a claim in the amount of $1,244,017.00.

Brunswick Homes filed this appeal complaining that:

1. The Bankruptcy Court erred in its determination of the amount of the secured claim of Brunswick Homes and

2. The Bankruptcy Court erred in reducing the amount of the secured claim of

4

Brunswick Homes by the amount of the third lien note payable to Brunswick Properties, LLC.[4]

## II.     ANALYSIS

### A.     Standard of Review

When reviewing a decision of the Bankruptcy Court, the "district court functions as an appellate court and applies the same standard of review generally applied in federal appellate courts." *Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103-04 (5th Cir. 1992).

Accordingly, the district court must accept the bankruptcy court's findings of fact unless clearly erroneous and examine *de novo* the court's conclusions of law. *See Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1307-08 (5th Cir. 1985). Under the clearly erroneous standard, the court will only reverse if, after reviewing all of the evidence in the record, the court is "left

---

[4] Appellant Brunswick Homes filed its Statement of Issues Presented On Appeal in the bankruptcy cause number on August 8, 2007 (Docket Entry 247). The Court will hold Brunswick Homes to the issues stated in that filing. Further, the Court expressly refuses to entertain any issue presented in Brunswick Homes' brief that was not included in Brunswick Homes' statement of issues on appeal filed in the Bankruptcy Court. *See In re GGM, P.C.*, 165 F.3d 1026, 1032 (5th Cir. 1999). Thus, the Court overrules any issue argued by Brunswick Homes in its brief that was not included in Brunswick Homes' statement of issues on appeal for failure to preserve the issue for appeal. *Id.* (holding that even if an issue is argued in the Bankruptcy Court and ruled on by that court, the issue is not preserved for appeal unless the appellant includes the issue in its statement of issues on appeal).

Additionally, Appellee Jeffrey Mims raised concerns, in his brief, as to whether Brunswick Homes paid $1,638,404.31 to Northstar. The Court finds that Mims failed to preserve this issue for appeal, and thus, the Court cannot properly decide this issue. *See Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000) (An argument not raised before the lower court cannot be asserted for the first time on appeal); *Gilchrist v. Westcott (In re Gilchrist)*, 891 F.2d 559, 561 (5th Cir. 1990) (Because the issue was not raised before the bankruptcy court, the issue should not be considered by the reviewing court).

with the definite and firm conviction that a mistake has been made" *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 565 (5th Cir. 1995) (quoting *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)).

Under this framework, the Court reviews Brunswick Homes' Issues.

**B.     Brunswick Homes' Secured Claim**

Brunswick Homes complains that the Bankruptcy Court erred when determining the amount of Brunswick Homes' secured claim. Brunswick Homes argues that it should be able to recover the entire amount Brunswick Homes paid to Northstar as a secured claim under the doctrine of equitable subrogation.

In determining the applicability of the doctrine of equitable subrogation, Texas courts have stated: "Equitable subrogation may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. A right to subrogation is often asserted by one who pays a debt owed by another." *Starcraft Co. v. C.J. Heck Co. of Tex., Inc.*, 748 F.2d 982, 990-91 (5th Cir. 1984) (citing *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333,337 (Tex. 1980)). To recover under the doctrine of equitable subrogation, the claimant must demonstrate that (1) the party on whose behalf the claimant discharged a debt was primarily liable on the debt, (2) the claimant paid the debt involuntarily, and (3) the circumstances of the case favor equitable relief. *See Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142-46 (Tex. 2008). Equitable subrogation is governed by principles of equity and is a matter left to the court's discretion. *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002); *In re*

6

*Cueva*, 371 F.3d 232, 238 (5th Cir. 2004); *see Murray v. Cadle Co.*, 257 S.W.3d 291, 302 (Tex. App.–Dallas 2008, pet. denied). Under this framework, the Court considers whether the Bankruptcy Court abused its discretion by not applying the doctrine of equitable subrogation to the entire amount Brunswick Homes paid on the Northstar Note.

As mentioned, in determining whether Brunswick Homes could recover under the doctrine of equitable subrogation, the Bankruptcy Court found that Brunswick Homes was entitled to recover only $1,138,404.00 of the $1,638,404.31 it paid to Northstar as a secured claim.

It is unclear from the Bankruptcy Court's findings, however, why Brunswick Homes could only recover a portion of the amount paid to Northstar. Nor is it clear how the court calculated the amount Brunswick Homes was entitled to recover as a secured claim. Further, the Bankruptcy Court did not include any factual findings supporting its determination that Brunswick Homes could not use the doctrine of equitable subrogation to recover "the additional $500,000 Brunswick Homes paid to Northstar." Without these finding, the Court cannot determine whether the Bankruptcy Court abused its discretion in applying the doctrine of equitable subrogation. *See Chandler v. City of Dallas*, 958 F.2d 85, 88-89 (5th Cir. 1992) (A trial court's failure to detail its findings or the evidentiary basis for its findings negates the reviewing court's ability to review.) Accordingly, the Court must vacate the order of the Bankruptcy Court and remand for the Bankruptcy Court to fully articulate its findings. *See id.*

This Court does observe that the Bankruptcy Court patiently heard all of the evidence, allowed the parties to present their cases in full, and sought to resolve the case in a reasonable manner. The record in this case is massive and the issues complicated, which makes the task of articulating the findings of fact and conclusions of law quite burdensome. That is however, the exact reason why the Court needs detailed findings of fact and thorough conclusions of law.

## III. CONCLUSION

In the instant case, the Bankruptcy Court's legal conclusions cannot be reviewed by this Court without further factual finding supporting the Bankruptcy Court's conclusion that Brunswick Homes was entitled to equitable subrogation for a portion of the amount it paid to Northstar. Therefore, on remand, the Bankruptcy Court must amend its findings to include detailed findings as to why Brunswick Homes could only recover a portion of the amount it paid to Northstar.

For the foregoing reasons, the Court VACATES and immediately REMANDS the Bankruptcy Court's July 20, 2007, Order Granting in Part and Denying in Part Objections to the Claim of Brunswick Homes, LLC. for clarification consistent with this opinion.

**It is SO ORDERED.**

**SIGNED this 30th day of September, 2008.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE